**Clifford R. LARSEN, Plaintiff-Appellant,**

v.

**Thomas WARRINGTON, Defendant,**

**and**

**Farmers State Bank of Lyle, Defendant-Appellee.**

**No. 83–633.**

Court of Appeals of Iowa.

Feb. 21, 1984.

Joel J. Yunek of Laird, Burington, Bovard, Heiny, McManigal & Walters, Mason City, for plaintiff-appellant.

Ralph A. Smith of Noah & Smith, Charles City, for defendant-appellee.

David M. Nelsen of Nelsen & Folkers, Mason City, for defendant.

Heard by SNELL, P.J., and SCHLEGEL and HAYDEN, JJ.

SCHLEGEL, Judge.

Plaintiff, a feed dealer, appeals from a judgment for defendant bank, Farmers State Bank of Lyle, Minnesota, in an action for damages for conversion of feeder pigs allegedly transferred to plaintiff by defendant Warrington, a farmer. Plaintiff asserts that even though defendant bank (Bank) had a duly perfected security interest in the pigs, the Bank had waived its security interest through a prior course of dealing. Plaintiff also asserts that, assuming the Bank did not waive its security interest, the trial court erred in determining the measure of damages and in not entering judgment against the Bank on a theory of unjust enrichment. Defendant Bank asserts that Minnesota law should govern on the issues relating to the security agreement. We affirm.

Defendant Warrington, an Iowa farmer, was involved in a feeder pig operation on his farm located in Iowa approximately eight miles from Lyle, Minnesota. Defendant Warrington obtained financing for his operation from defendant Bank in 1979 and continued to do so until February, 1982. Warrington executed various documents giving defendant Bank a security interest in his livestock. The agreement provided that Minnesota law would apply and specifically forbade disposition of the livestock without the bank's written consent. The notes and security agreements also contained after-acquired property clauses securing as collateral pigs and hogs thereafter acquired by Warrington.

It is undisputed that over the course of the next two years, Warrington was allowed to sell feeder pigs for cash and apply the proceeds to his notes with the defendant Bank and to pay other operating expenses such as feed bills. A bank officer, George Draves, testified that the Bank normally allowed farmers to sell livestock to pay off their loans without requiring written consent prior to the sale. Mr. Draves also testified that he knew Warrington had sold his feeder pigs in the past to pay his feed bill.

Warrington transferred to plaintiff, in October, 1981, 134 feeder pigs in exchange for forgiveness of part of an existing debt for feed. The remainder of the feed debt was to be forgiven in exchange for the continued use of Warrington's facilities in raising the pigs. Warrington continued to care for the pigs with feed supplied by plaintiff. The transfer and agreement to continue to care for the pigs were based upon oral agreements. Larsen was not informed of the security interest on the pigs held by the Bank nor did he obtain any information from the Secretary of State's office regarding financing statements filed on Warrington's livestock.

Warrington informed the Bank on January 7, 1982, that he had sold the pigs. He apparently did not inform the Bank as to the arrangement he had made with the plaintiff concerning the care and feeding of the pigs. Larsen disposed of fourteen of the feeder pigs in January, 1982. On February 7 or 8, 1982, the Bank discovered the remaining 106 pigs on Warrington's farm and notified Larsen of their security interest.[1] The bank repossessed and sold the pigs on February 25, 1982, for $6,957.14. Plaintiff allegedly provided $6,698.75 worth of feed and straw from the time the pigs were transferred to him in October until they were disposed of. The value of the pigs at the time they were transferred was agreed upon by Larsen and Warrington at approximately $5,500.

Plaintiff filed this action seeking damages from both the Bank and Warrington on a theory of conversion or, alternatively, unjust enrichment. The Bank cross-claimed against Warrington and counterclaimed against plaintiff for the conversion of the seventeen pigs he had disposed of prior to the Bank's repossession of the 106 pigs. Proceedings against Warrington were stayed when he filed for bankruptcy.

---

1. The number of pigs do not add up to the original 134 transferred due to losses caused by disease and housing conditions.

The trial court, applying Iowa law, found that the Bank had a valid security interest in the pigs which was not waived by its course of dealing with Warrington. Specifically, the trial court ruled that the prior course of dealing between the Bank and Warrington was for Warrington to sell livestock for cash and not to transfer the animals in partial or complete satisfaction of debts, that the course of dealing was for sales of feeder pigs to take place when the livestock reached an appropriate market weight and not before, and that the Bank never gave express consent to any sales or conveyances of the collateral. The trial court also concluded that the sale from Warrington to the plaintiff was of "doubtful validity."

■ This was a law action tried to the court. *See Mosebach v. Blythe,* 282 N.W.2d 755, 758 (Iowa Ct.App.1979). Trial court's fact findings are binding on us if supported by substantial evidence. Iowa R.App.P. 14(f)(1). Such findings have the effect of a jury verdict and are to be disturbed only if induced by an erroneous application of law. *Hedrick Savings Bank v. Myers,* 229 N.W.2d 252, 254 (Iowa 1975).

■ I. *Choice of Law.* The parties stipulated prior to trial that either Iowa law or Minnesota law applied to this case and that the law of the State of Minnesota and of Iowa was the same as it pertains to this action in all respects except the judicial interpretation of Iowa Code section 554.-9306(2) and Minnesota Statutes section 336.9–306. *See Hedrick Savings Bank v. Myers,* 229 N.W.2d 252; *Wabasso State Bank v. Caldwell Packing Co.,* 308 Minn. 349, 251 N.W.2d 321 (1976). Defendant bank properly pled and proved the Minnesota statute and caselaw interpreting that statute. *Iowa Kemper Insurance Co. v. Cunningham,* 305 N.W.2d 467, 469 (Iowa 1981); Iowa R.Civ.P. 94; Iowa Code §§ 622.59, .61 (1983). The wording of the Iowa statute and the Minnesota statute is identical. The judicial interpretations of the "or otherwise" provision in those statutes indicate that Iowa has a policy of protecting the third party buyer while Minnesota has a policy of protecting the holder of the properly perfected security interest in cases, such as this one, where the security agreement expressly prohibits the sale of collateral without the financier's prior written approval, but the financier has not objected to a prior course of dealing in which the borrower has sold collateral without consent.

The Bank asserts that under the identical Uniform Commercial Code choice of law principles of Minnesota and Iowa, the parties' designation of Minnesota law governs this action. The plaintiff, however, asserts that the parties to a secured transaction cannot by agreement choose the law of the state to bind others not parties to that secured transaction. *See In re Kokomo Times Publishing and Printing Corp.,* 301 F.Supp. 529, 536 (S.D.Ind.1968). Plaintiff asserts that therefore, the "last event" rule of Iowa Code section 554.9103(1)(b) applies and requires application of Iowa law. (Plaintiff asserts that Iowa Code section 554.1105(1) does not apply because of the exception contained in section 554.1105(2).) The last event that occurred under that rule allegedly was the perfection of the security interest by filing a financing statement with the Secretary of State of Iowa.

We do not find it necessary to decide the issue, however, because, as shown below, the plaintiff has failed to establish that the transfer of pigs to him from Warrington was authorized under Iowa law by the prior course of dealing between Warrington and the bank. The bank's security interest in Warrington's livestock, therefore, retains priority over the plaintiff's claim under both Iowa and Minnesota law.

■ II. *Course of Dealing.* The issue is whether the bank retained a security interest under Iowa law in the pigs after their transfer to the plaintiff, Larsen. The applicable law is Iowa Code section 554.-9306(2). That section provides:

> Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the dis-

position was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

As we noted in *Ottumwa Production Credit Association v. Heinhold Hog Market, Inc.*, 340 N.W.2d 801, 802 (Iowa Ct. App.1983), "[t]he 'otherwise' language, upon proper proof, includes a prior course of dealing, *Hedrick Savings Bank v. Myers*, 229 N.W.2d 252 (Iowa 1975), and constitutes authority to sell pledged collateral under § 554.9306(2). *Id.* at 256." Notwithstanding the fact that there is a specific prohibition of sale without written consent contained in a security agreement, a holder of a security interest may be held to have impliedly authorized the sale of collateral by a prior course of dealing. *Hedrick Savings Bank v. Myers*, 229 N.W.2d at 255–56.

The security agreement in this case does not authorize any disposition of the collateral. Warrington was, however, impliedly authorized to *sell* the feeder pigs for *cash* and apply the proceeds to the interest and principle of his loans from the bank and to pay his other debts and operating expenses. The trial court found that the transfer of the pigs by Warrington in partial satisfaction of his indebtedness to Larsen was not within the course of dealing between the defendant Bank and Warrington. This decision appears to have been made upon the assumption that the transaction must be within the course of dealing acquiesced in by the secured creditor in order for the "course of dealing" exception to apply to sales of secured assets.

■ "Course of dealing" is defined in Iowa Code section 554.1205(1) as "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." It follows that when the parties' actions fall outside the "sequence of previous conduct" there is no "understanding" between the parties authorizing the transaction.

We hold that in order for a buyer to take collateral free of a properly perfected security interest under the "course of dealing" doctrine recognized in the *Hedrick* case, that buyer must present proof of a course of dealing *and* show that the purchase involved was within that course of dealing. While we believe the secured party should bear the risk of loss when the buyer purchases the collateral in the ordinary course of dealing, the buyer should bear the risk that the disposition of the collateral is being made outside the course of dealing in a manner not impliedly authorized by the secured party. This holding is consistent with the prior Iowa decisions in this area.

The defendant in *Hedrick* established that despite a provision in the security agreement prohibiting sale without the secured party's consent, the debtor frequently sold farm animals pledged as collateral. Livestock were sold to several dealers without the bank permission over a four year period. The bank, in *Hedrick*, had knowledge of these sales, did not object to the sales, and accepted checks from these sales for credit to the debtor's account. This established a course of dealing from which the finder of fact could find implied authority to sell to the defendant livestock buyer. *Hedrick Savings Bank v. Meyers*, 229 N.W.2d at 255. There was no evidence that the challenged transactions were different from prior transactions.

In *Heinhold*, the defendant livestock buyer established that the debtor had been doing business with the secured creditor for a period of eight years and during that time the debtor was permitted to sell crops and livestock pledged as security without prior approval. The evidence indicated that the debtor would sell the livestock at the market when he determined the hogs were ready and the market was good. *Ottumwa Production Credit Association v. Heinhold Hog Market, Inc.*, 340 N.W.2d at 802–03. The challenged sale in that case involved the sale of twenty-two hogs to the defendant livestock dealer in a transaction similar to past transactions. There was no

evidence the challenged sale was not within the prior course of dealing between the secured creditor and the debtor.

■ The evidence here indicates otherwise. The prior course of dealing between the Bank and the debtor Warrington was for Warrington to sell the feeder pigs for cash to various livestock dealers and to use that cash to pay the Bank and to pay other operating debts. The challenged transaction in this case involved a transfer of the feeder pigs directly to the feed dealer in partial satisfaction of the feed bill. Moreover, the debtor continued to maintain the animals in the same facilities and care for the animals in satisfaction of the remaining debt to the feed dealer.

The evidence clearly established that the course of dealing between the Bank and Warrington was for Warrington to sell the feeder pigs for cash and apply the proceeds to his various debts. The trial court's determination that Warrington was acting outside that course of dealing when he transferred the pigs directly to Larsen is supported by substantial evidence. Even though plaintiff was able to establish a course of dealing impliedly authorizing Warrington to sell feeder pigs, the transfer of the feeder pigs to plaintiff in satisfaction of a preexisting debt was not within that course of dealing. The Bank's security interest retained priority over any interest held by plaintiff.

■ III. *Ownership of Feeder Pigs.* Plaintiff asserted that two-thirds of the feeder pigs were not subject to the Bank's security interest because they were owned by Charles Warrington, the father of Tom Warrington. Charles Warrington apparently transferred thirty-one sows to Tom Warrington for which it was agreed that payment would be made in the future. Approximately two-thirds of the feeder pigs involved in this transaction were born of this stock.

The trial court found that it was the intention of Warrington and his father that

Warrington would be the owner of the sows and their offspring. Warrington was required, in exchange, to pay his father some fair price for the sows. This finding is binding upon us if supported by substantial evidence. Iowa R.App.P. 14(f)(1). The defendant. Warrington listed the sows as assets in numerous financial statements given to the bank. Warrington claimed ownership of all sows and listed an indebtedness to his father in bankruptcy proceedings. Moreover, Warrington sold all the sows and retained the proceeds for his own use without any limitations being imposed by his father. We hold that there was substantial evidence supporting the trial court's decision that Tom Warrington was the owner of the sows and all their offspring.

IV. *Unjust Enrichment.* Plaintiff asserted at trial that in the event the Bank's security interest is valid, he should be entitled to judgment against the Bank for money he expended in the care and feeding of the feeder pigs from the date of transfer in October, 1981, to February 25, 1982. Plaintiff testified that he expended $6,698.75 for feed and straw during that period. The evidence at trial indicated that the feeder pigs increased in value by approximately $3,000 during that same period.[2]

The trial court held that the fact plaintiff was selling feed on an open account to Warrington for the feeder pigs did not give plaintiff a "lien or 'priority'" over the perfected security interest of the Bank in the pigs. The trial court decision did not distinguish between the feed given to the pigs before the October transfer and the feed given to the pigs after the October transfer. The trial court also did not specifically address the plaintiff's claim for unjust enrichment.

■ Unjust enrichment is a doctrine of restitution. *Smith v. Harrison,* 325 N.W.2d 92, 94 (Iowa 1982). "The doctrine rests upon the equitable principle that one shall not be permitted to unjustly enrich

**2.** This includes the value of the seventeen pigs sold in January, plus the value of the pigs sold in February, minus the $5,500 value agreed on by Warrington and plaintiff in October.

himself at the expense of another or to receive property or benefits without making compensation therefor." *Glass v. Minnesota Protective Life Insurance Co.*, 314 N.W.2d 393, 397 (Iowa 1982) (quoting *Smith v. Stowell*, 256 Iowa 165, 173, 125 N.W.2d 795, 799–80 (1964)). In order to recover under a theory of unjust enrichment a plaintiff must prove that a defendant has received money which in equity and good conscience belongs to plaintiff. *Iconco v. Jensen Construction Co.*, 622 F.2d 1291, 1302 (8th Cir.1980). Any benefits received by the Bank were received pursuant to their security interest. It was not unjust for the Bank to receive them unless the security interest should be found invalid or subordinate to plaintiff's claim. *See Smith v. Harrison*, 325 N.W.2d at 94. Thus, the trial court was correct in not awarding plaintiff damages for the amounts expended in feeding and caring for feeder pigs after the October transfer.

V. *Damages for Conversion of Secured Asset.* The trial court ruled in favor of the Bank on its counterclaim against the plaintiff for damages as a result the conversion of the seventeen feeder pigs in January, 1982. The trial court awarded the Bank the amount received by the plaintiff for the feeder pigs plus the value of those butchered. This is in accord with the general rule that the measure of damages for conversion is the fair and reasonable market value at the time and place of taking. *Ontario Livestock Commission Co. v. Flynn*, 256 Iowa 116, 126, 126 N.W.2d 362, 368 (1964). Plaintiff asserts that because he had no actual knowledge of the Bank's security interest at the time of conversion, he "innocently" converted the livestock. Plaintiff asserts he should, therefore, be permitted to recover the value of the improvement to the feeder pigs. This argument ignores the fact that the Bank held a properly perfected security interest in the feeder pigs which was filed in the Secretary of State's office at the time of conversion. The trial court's determination of damages for conversion was supported by substantial evidence.

Because of our decision that the Bank's security interest in Warrington's feeder pigs retained priority over plaintiff's claim, we need not reach the other issues raised by plaintiff in his brief.

AFFIRMED.