# IN THE COURT OF APPEALS OF IOWA

No. 17-0907
Filed November 21, 2018


**THE SECURITY NATIONAL BANK OF SIOUX CITY, IOWA, as the duly appointed Personal Representative of the Estate of Roger E. Rand,**
    Plaintiff-Appellant,

**vs.**

**FRANK H. WELTE II, DIANE WELTE, MATTHEW WELTE, WELTE FLATS FARMS, INC., BJM, INC., WESTERN SLOPES FARMS, VALLEY FLATS FARMS, INC. and DONALD MOLSTAD,**
    Defendants-Appellees.
_____


Appeal from the Iowa District Court for Woodbury County, John D. Ackerman, Judge.


The Security National Bank of Sioux City, Iowa appeals the district court's ruling in a replevin action. **REVERSED**.


Daniel L. Hartnett and Marci L. Iseminger of Crary, Huff, Ringgenberg, Hartnett & Storm, PC, Sioux City, for appellant.

Lance D. Ehmcke and Jacob V. Kline of Heidman Law Firm, PLLC, Sioux City, for appellees.


Heard by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VOGEL, Presiding Judge.**

The Security National Bank of Sioux City, Iowa (SNB), was appointed personal representative of Roger Rand's estate and filed a petition for replevin against multiple defendants. SNB requested immediate possession of farm-related personal property upon which Rand held a perfected security interest. A hearing was held, and the district court issued two separate rulings, one of which is the subject of this appeal. On the merits, we find the district court erred in determining the two tractors, subject to this appeal, were properly sold within an implied course of dealing and thereby not subject to Rand's perfected security interest.

## I. Background Facts and Proceedings

Starting in 2010, Rand made various loans to Frank Welte II and his various business entities for the purpose of financing Frank's farming operation. Security agreements were executed to secure all present and future debts owed to Rand, giving Rand a blanket security interest in all farm-related property. The security interests were perfected by the filing of financing statements at the Iowa Secretary of State's office.

Rand died on August 29, 2016, and SNB was appointed personal representative of Rand's estate. SNB filed a petition for replevin on March 8, 2017, seeking possession of all secured property. Among the defendants listed in the petition were Frank; his son, Matthew Welte; and one of Frank's business entities,

BJM, Inc.[1]  The petition stated the plaintiff was entitled to immediate possession of all personal property and various intangible property in the possession of the defendants.  The petition also urged the court to set a hearing about the immediate possession of the collateral.

A hearing was held on May 3 and 4, 2017.  On May 9, the court issued a ruling stating a writ of replevin would be issued for certain property.  The ruling also set a bond and stated the court would issue a second ruling on whether SNB had a security interest in Matthew's two tractors, which were previously owned by Frank/BJM.  The court issued a second ruling on May 10, which determined Matthew acquired the tractors from Frank/BJM free of Rand's security interest.  The court found an implied course of dealing between Rand and Frank that allowed Frank/BJM to sell collateral in which Rand had a security interest without permission from Rand.  Also, the court found that since First State Bank had loaned Matthew the money to purchase the two tractors, it had a purchase-money security interest in the tractors, which was superior in any interest Rand/SNB may have.  SNB appeals.[2]

## II.  Standard of Review

"Replevin actions are tried as 'ordinary proceedings.'  Our review is for correction of errors at law."  *Ankeny Cmty. Sch. Dist. v. Van Gorp*, 501 N.W.2d

---

[1] BJM, Inc. is a corporation through which Frank purchases farm equipment.  Matthew was a shareholder in BJM from 2010–2012, signing the promissory notes and security agreements during that period, both on behalf of BJM as well as in his individual capacity.
[2] Given our resolution on the merits, we need not reach SNB's claim that the hearing was only intended to be an initial hearing.  The court issued a final ruling on the merits, and this appeal stems from that ruling.

506, 507 (Iowa 1993) (internal citations omitted); *see also* Iowa Code § 643.2 (2017); Iowa R. Civ. P. 6.907.

### III. Tractors in Matthew Welte's Possession

#### A. Rand's Security Interest

SNB asserts the district court inappropriately determined the tractors in Matthew's possession were not subject to Rand's perfected security interest. In the May 10, 2017 ruling, the court found "the evidence establishe[d] that there was [an] implied course of dealing between Mr. Rand and BJM/Frank Welte such that BJM/Frank Welte had the authority to sell collateral in which Mr. Rand had a security interest without written permission from Mr. Rand." However, SNB argues "[t]he 'course of dealing' theory is not meant to absolve a giftee of the obligations associated with a perfected security interest in property. There was no evidence presented at the initial hearing that would establish a course of dealing for this type of transfer," that is, a gift from father to son for far less than fair market value.

Iowa Code section 554.9315(1)(a) states "a security interest . . . continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest." Our supreme court has held such authorization may be "implied from a prior course of dealing between the secured party and the debtor." *C & H Farm Serv. Co. of Iowa v. Farmers Sav. Bank*, 449 N.W.2d 866, 871 (Iowa 1989) (citing Iowa Code § 554.9306(2) (1981)).[3] "A 'course of dealing' is a sequence of conduct

---

[3] In 2000, our legislature enacted Iowa Code section 554.9315 as the replacement of Iowa Code section 554.9306(2). *Peoples Tr. & Sav. Bank v. Security Sav. Bank*, 815 N.W.2d 744, 761 (Iowa 2012).

concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding from interpreting their expressions and other conduct." Iowa Code § 554.1303(2). However,

> when the parties' actions fall outside the "sequence of previous conduct" there is no "understanding" between the parties authorizing the transaction. . . . [I]n order for a buyer to take collateral free of a properly perfected security interest under the "course of dealing" doctrine . . . , that buyer must present proof of a course of dealing *and* show that the purchase involved was within that course of dealing. While we believe the secured party should bear the risk of loss when the buyer purchases the collateral in the ordinary course of dealing, the buyer should bear the risk that the disposition of the collateral is being made outside the course of dealing in a manner not impliedly authorized by the secured party.

*Larsen v. Warrington*, 348 N.W.2d 637, 641 (Iowa Ct. App. 1984);[4] *see also*

*Humboldt Tr. & Sav. Bank v. Entler*, 349 N.W.2d 778, 781 (Iowa Ct. App. 1984).

---

> The new UCC provision allows a lender to "authorize[] the disposition [of collateral] free of the security interest," but when such authorization occurs, a security interest attaches "to any identifiable proceeds of the collateral." The new provision clearly separates a security interest in the *collateral*, which is addressed under subsection (a), from a security interest in *identifiable proceeds*, which is addressed by subsection (b). The clear import of the legislative action is that waiver of rights in collateral does not necessarily mean waiver of rights in the proceeds.

*Id.* (internal citation omitted). For the purposes of this opinion, we are only concerned with Iowa Code section 554.9315(1)(a) and the collateral because no proceeds resulted from the transaction at issue.

[4] The Iowa Supreme Court declined to follow *Larsen* in *C & H Farm Service Co.*, 449 N.W.2d at 874 n.3. The court held "[w]here a third party purchases collateral from a debtor under [the course of dealing] doctrine—whatever the consideration for the purchase—the third party is not liable to the secured party for conversion of the collateral. The secured party has waived its security interest in collateral in the hands of third party purchasers." *Id.* at 873–74. *Larsen* involved a prior course of dealing where the secured party allowed the debtor to sell feeder pigs to various livestock dealers for cash and then use the cash to pay either the secured party or other operating debts. 348 N.W.2d at 642. "The challenged transaction in [the *Larsen*] case involved a transfer of the feeder pigs directly to the feed dealer in partial satisfaction of the feed bill." *Id.* Therefore, the challenged transaction was not akin to the previous transactions because of the different purchaser as well as the disposition of proceeds. *See id.* On the contrary, *C & H Farm Service Co.* did not involve different types of purchasers and was focused on the fact the secured party

When determining whether the disposition of collateral is within the course of dealing, we focus on whether the sale of the collateral was authorized and not on the desired disposition of proceeds. *Humboldt Tr. & Sav. Bank*, 349 N.W.2d at 781–82; *see also Ottumwa Prod. Credit Ass'n v. Heinhold Hog Mkt., Inc.*, 340 N.W.2d 801, 803 (Iowa Ct. App. 1983).

According to the security agreements involved here, Frank/BJM may not "consume, assign or transfer any Collateral without prior written consent of Secured Party." Despite this provision, Frank testified he regularly bought and sold machinery without seeking Rand's permission.[5] He also testified their agreements were usually verbal and they "didn't do nothing in writing." SNB prepared a list of Frank's equipment for this proceeding that they believed Rand had a security interest in, and Frank explained he had sold or traded many items on the list.

Even assuming Frank and Rand had created a course of dealing distinct from their written agreements, Matthew has not carried his burden to show the tractors were sold to him "within that course of dealing." *Larsen*, 348 N.W.2d at 641. Matthew purchased the tractors, a 2008 John Deere 8430 and a 2008 Case IH MX335, from Frank/BJM in 2013 when he began his own farming operation. Matthew acknowledged the only consideration he provided was an agreement to satisfy two outstanding loans on the tractors. He ultimately paid about $27,000 for

---

did not always receive the proceeds. 449 N.W.2d at 871–74 (finding the course of dealing between the secured party and debtor was that the debtor could sell the collateral without the secured party's prior written consent and the proceeds could be applied to any purpose the debtor desires; thus, payment of a debt with the proceeds was not outside the course of dealing).

[5] We also note Frank testified he sought Rand's permission before selling some real estate. Rand denied permission shortly before his death, which caused problems for Frank.

the John Deere 8430 and about $28,000 for the Case IH MX335, both payments made directly to the lending institutions. Prior to the May 3, 2017 hearing, SNB estimated—and the Weltes did not dispute—the John Deere was worth $116,500 and the Case IH was worth $129,000. That left an estimated equity in the John Deere of $89,500 and $101,000 in the Case IH. Even if a course of dealing existed, where Rand allowed Frank the freedom to manage his fleet of farm machinery, a benevolent sale of tractors from father to son for less than a quarter of their value would not fall within the scope of the course of dealing. *See Humboldt Tr. & Sav. Bank*, 349 N.W.2d at 781–82; *Larsen*, 348 N.W.2d at 641. Because nothing in the record indicates Rand consented in any prior course of dealing to allow such dissipation of secured assets, the district court erred in determining Rand/SNB did not have a perfected security interest in the two tractors.

## B. Priority

In order to "purchase" the tractors from Frank/BJM by paying off the outstanding loans, Matthew obtained a loan from First State Bank in Danbury, listing the tractors as collateral. Matthew asserts First State Bank has priority because it has a purchase-money security interest.[6] However, a comment to the Uniform Commercial Code provides clarity for situations similar to this case:

> A owns an item of equipment subject to a perfected security interest in favor of SP-A. A sells the equipment to B, not in the ordinary course of business. B acquires its interest subject to SP-A's security interest. . . . [I]f B creates a security interest in the equipment in favor of SP-B, SP-B's security interest is subordinate to SP-A's security interest, even if SP-B filed against B before SP-A filed against A, and even if SP-B took a purchase-money security interest. Normally, SP-

---

[6] Generally, "a perfected purchase-money security interest in goods other than inventory or livestock has priority over a conflicting security interest in the same goods." Iowa Code § 554.9324(1).

B could have investigated the source of the equipment and discovered SP-A's filing before making an advance against the equipment, whereas SP-A had no reason to search the filings against someone other than its debtor, A.

U.C.C. § 9-325 cmt. 3 (Am. Law Inst. 2017). In this case, First State Bank had the opportunity to investigate the ownership and value of the tractors and should have discovered Rand's perfected security interest because all of Rand's security interests were perfected by the filing of financing statements with the Iowa Secretary of State's office. Because Rand had a perfected security interest and the transaction between Frank/BJM and Matthew was not within any implied course of dealing, Rand's perfected security interest in the tractors has priority over First State Bank's perfected security interest. *See id.*

## IV. Conclusion

We find, even assuming Frank/BJM and Rand had an implied course of dealing, Frank's disposition of the tractors by gifting the equity to Matthew was not within the prior course of dealing.

**REVERSED.**