**HEDRICK SAVINGS BANK, Appellant,**

v.

**Mildred M. MYERS, Executor of the Estate of Claude Myers, and Merle Myers, d/b/a Packwood Stockyards, Appellees.**

No. 2–56465.

Supreme Court of Iowa.

May 21, 1975.

Richard C. Bauerle, Ottumwa, for appellant.

Bailey C. Webber, Ottumwa, for appellees.

Heard before MOORE, C. J., and LeGRAND, REES, REYNOLDSON and HARRIS, JJ.

LeGRAND, Justice.

This appeal raises questions concerning plaintiff's lien upon certain livestock purchased by defendants at five separate auction sales. The trial court found for defendants and we affirm.

Plaintiff's claim arises out of its financial dealings with Dallas Eckley, a livestock and grain farmer, extending from 1966 to 1970. Plaintiff lent Eckley money from time to time, secured by financing statements and security instruments on Eckley's livestock and other personal property.

At the time in question, the security pledged included "all equipment, all farm products, including but not limited to crops, livestock, supplies used or produced in farming operations, contract rights and accounts," as well as the proceeds from the collateral described in the security instrument. The agreement contained a clause

that Eckley would not sell, assign or transfer any of the encumbered property without written consent of the plaintiff bank.

Despite this last provision prohibiting sale without plaintiff's consent, Eckley not infrequently sold feeder pigs, brood sows, and "butchers" pledged as collateral to plaintiff.

These sales included some to several livestock dealers in addition to defendants. In 1968 and 1969 Eckley sold a total of 52 sows and in 1969 he sold 247 sows. He also sold numerous feeder pigs, described as those weighing not more than 100 pounds.

During these two years Eckley made five separate sales to defendant as follows:

July 30, 1968—19 sows for $1,257.92
February 19, 1969—15 sows for $912.90
March 8, 1969—22 "butchers" for $885.30
April 15, 1969—21 "butchers" for $932.10
September 15, 1969—19 sows for $1,346.95

These are the transactions which plaintiff challenges, asserting it had a valid lien on these 96 animals. It claims defendant's purchases amounted to conversions for which it should have had judgment in the amount of $5,335.17. Instead the trial court held for defendant, principally on the following specific finding:

"Upon all the facts and circumstances shown in the evidence, the court finds defendants have sustained the burden of establishing by a preponderance of the evidence that the plaintiff bank expressly authorized the sale of 'feeder' pigs and impliedly authorized the sale of sows, butchers and fat hogs by the debtor at such times, places and for such price as he deemed advantageous, as shown by the course of dealing between the bank and its debtor, trusting Eckley to account for the proceeds and to maintain the bank's collateral unimpaired by replacement of sows sold by him."

Plaintiff raises two issues on this appeal. It asserts the trial court erred in finding, first, plaintiff had authorized the sale of the livestock; and, next, the trial court also erred in finding plaintiff had waived its right to the proceeds of these sales by failing to properly apply the proceeds of other collateral sold to satisfy Eckley's indebtedness, which, had it been done, would have discharged the debt.

This is a law action tried without a jury. The trial court's findings are binding on us if supported by substantial evidence. Rule 344(f)(1), Rules of Civil Procedure. Such findings have the effect of a jury verdict to be disturbed only if induced by an erroneous application of law. Frantz v. Knights of Columbus, 205 N.W.2d 705, 708 (Iowa 1973); Reichle v. Zeman, 204 N.W.2d 636, 637 (Iowa 1973).

Applying these principles to the case at hand, we affirm the judgment for reasons hereafter stated. Our conclusion on the issue of plaintiff's consent to the sales in question makes it unnecessary for us to consider the second ground of plaintiff's appeal—alleged error in the trial court's findings concerning plaintiff's sale of collateral and application of the proceeds.

I. The question whether plaintiff's lien was waived by authorizing Eckley's various sales to defendants raises controversial issues under Article 9 of the Uniform Commercial Code. (Chapter 554, The Code.)

The controlling statute (§ 554.9306(2)) contains this:

"Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale * * * by the debtor *unless his action was authorized by the secured party in the security agreement or otherwise*, and also continues in any identifiable proceeds including collections received by the debtor." (Emphasis supplied.)

It is conceded plaintiff expressly authorized sale of the feeder pigs, and the sole issue is whether plaintiff also impliedly consented to the sale of the other animals.

Since such authorization was not given in the security instrument, the implied consent must be found, if at all, in the "or otherwise" provision of the statute. The trial

court found such authorization in the course of dealing between plaintiff and Eckley. The crucial question is whether a course of dealing may constitute authority to sell in violation of the express prohibition of the security agreement.

Plaintiff argues this finding is not only contrary to the evidence but is also violative of § 554.1205(4), which we set out in part:

"(4) the express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable, express terms control both course of dealing and usage of trade and course of dealing controls usage of trade."

We hold there is substantial evidence to support the trial court's finding that, from the very beginning of plaintiff's relationship with Eckley, sales of livestock pledged as collateral were made to various dealers. Plaintiff had knowledge of this, raised no objection, accepted checks from these sales for credit to Eckley's account, and clearly relied on Eckley's honesty to properly account for the proceeds. This established a course of dealing from which the trial court could find, as it did, implied authority to sell to defendants in the challenged transactions.

That, however, simply brings us to the real issue: Is that finding consistent with the terms of the security instrument by any reasonable construction; or is it unreasonable so that the course of dealing must give way to the express prohibition against sale without written consent?

The interplay of these two statutes (§ 554.9306(2) and § 554.1205(4)) has been considered by a number of courts with varying results. See 47 Tex.L.Rev. 309, 312–314 (1969); XVII DePaul L.Rev. 447, 453–455 (1968).

We came close to deciding the exact question now before us in Lisbon Bank & Trust Company v. Murray, 206 N.W.2d 96 (Iowa 1973), but one important factual distinction—which we discuss later—prevents that case from controlling this one.

The leading case to support defendant's argument is Clovis National Bank v. Thomas, 77 N.M. 554, 425 P.2d 726 (1967). It is argued the impact of Clovis has been weakened, if not destroyed, because the New Mexico legislature almost immediately amended its law to make the statute conform to the view plaintiff wants us to adopt here.

Nevertheless, Clovis has been followed by Central Washington Production Credit Association v. Baker, 11 Wash.App. 17, 521 P.2d 226, 228 (1974); Planters Production Credit Association v. Bowles, (Ark.1974), 511 S.W.2d 645, 649, 650; United States v. Central Livestock Association, Inc., (D.N.D. 1972), 349 F.Supp. 1033, 1034; Baker Production Credit Association v. Long Creek Meat Company, Inc., (1973), 266 Or. 643, 513 P.2d 1129, 1134. It was also at least tacitly approved by us in Lisbon Bank & Trust Company v. Murray, supra.

A contrary result was reached in Garden City Production Credit Association v. Lannan, 186 Neb. 668, 186 N.W.2d 99, 103–104 (1971), and First National Bank of Atoka v. Calvin Pickle Company, (Okla.App.1973), 516 P.2d 265. Cf. Vermilion County Production Credit Association v. Izzard, 111 Ill.App.2d 190, 249 N.E.2d 352, 354, 355 (1969).

We find both the result and the rationale of Clovis and cases which follow it more persuasive and we now adopt it. We believe our Lisbon opinion presaged this conclusion.

We have already adverted to an important fact which distinguishes Lisbon from the present case. Unlike here, in Lisbon there was no prohibition against sale without written consent and we were careful to postpone until another day a determination of what effect that might have. That other day has now arrived.

■ We rely on *Lisbon* for the principle that evidence of a course of dealing has relevance in interpreting agreements under the Uniform Commercial Code. (206 N.W.2d at 98.) Taking *Lisbon* one step further, we now hold a prior course of dealing may, upon proper proof, constitute authority to sell pledged collateral under § 554.9306(2). As used in the statute, "otherwise" should be construed to include a prior course of dealing. See Uniform Commercial Code (1972), J. White and R. Summers, pages 84–86.

In summary, there is substantial evidence to support the trial court's findings and the trial court correctly applied the statutes heretofore mentioned in arriving at its conclusion.

As previously pointed out, we do not reach plaintiff's second contention, since our resolution of the first dictates an affirmance of the judgment.

Affirmed.