**OTTUMWA PRODUCTION CREDIT ASSOCIATION, Ottumwa, Iowa, Plaintiff-Appellant,**

v.

**HEINHOLD HOG MARKET, INC., Defendant-Appellee.**

No. 83–91.

Court of Appeals of Iowa.

Sept. 27, 1983.

Bailey C. Webber of Webber, Gaumer & Emanuel, P.C., Ottumwa, for plaintiff-appellant.

M.H. Pothoven of Clements, Blomgren & Pothoven, Oskaloosa, for defendant-appellee.

Considered by OXBERGER, C.J., and DONIELSON, SNELL, SCHLEGEL, HAYDEN, and SACKETT, JJ.

OXBERGER, Chief Judge.

Plaintiff appeals from a summary judgment for defendant, a livestock buyer who purchased hogs from Jackson upon which plaintiff claims a security interest. On appeal, plaintiff asserts that (1) evidence of "a course of dealing" does not support the defense of waiver, and authorization, as opposed to waiver, was not pleaded; and (2) there was no evidence of express authority from plaintiff to Jackson to sell the hogs, and whether there was implied authority is a question of fact which cannot be decided upon a motion for summary judgment. We affirm.

Plaintiff Production Credit Association loaned James Jackson, a farmer, money for operating capital in 1977 and 1978. Jackson executed a security agreement pledging animals, equipment, buildings, and crops as security. The security agreement contained a provision requiring written authorization from the plaintiff for any sale of the collateral. On November 7 and 8 of 1978 defendant purchased a total of twenty-two hogs from Jackson, paying $3,745.33. Plaintiff's petition asserted that Jackson defaulted on the note.

Plaintiff sued the defendant stockyard for conversion, asserting that the plaintiff's interest in the collateral hogs followed them into defendant's hands. Defendant refused to pay the value of the hogs to plaintiff.

Defendant amended its answer to assert the affirmative defense that plaintiff waived its right to insist on a written sale authorization.

Defendant moved for summary judgment, contending that plaintiff had waived its right to insist on the provision in the security agreement which required written permission to sell the collateral, and that it had impliedly authorized to sell the hogs by its course of dealing. Under the Uniform Commercial Code, a security interest does not follow collateral into the hands of a purchaser in the ordinary course of business

if the purchase is authorized by the security interest holder. *See* Iowa Code § 554.-9306(2) (1983). The motion for summary judgment was supported by an affidavit from Jackson that plaintiff did not require written permission for sale of the hogs and at times allowed him to use the proceeds from sales for operating capital.

Plaintiff's resistance to the motion for summary judgment was supported by an affidavit in which a former officer of the plaintiff lender stated that borrowers, including Jackson, were allowed to sell collateral provided the money was brought "directly to Ottumwa PCA." Although the affidavit states that plaintiff did not authorize Jackson to use money for any purpose other than to repay the loan, it did not deny that sale of the collateral was authorized.

The trial court granted the motion for summary judgment, holding that plaintiff authorized the sale of the collateral "by specifically telling the Jacksons that they were authorized to make the sale." The court held that since the sale was expressly authorized, the plaintiff's security interest did not continue in the collateral. There was no specific conclusion as to waiver of the requirement that such authorization be written.

## I. Scope of Review

█ In *Frohwein v. Haesemeyer,* 264 N.W.2d 792 (Iowa 1978), the governing principals of reviewing the grant or denial of summary judgment motions was stated:

We view the underlying facts contained in the pleadings and the inferences to be drawn therefrom in the light most favorable to the party opposing the motion, and give to such party the benefit of any doubt as to the propriety of granting summary judgment. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied, and to reverse the grant of summary judgment if it appears from the record there is an unresolved issue of material fact.

*Id.* at 634. The burden is on the moving party who is required to show that there is no genuine issue of material fact involved in the case and that he is entitled to judgment as a matter of law. *Anita Valley, Inc. v. Bingley,* 279 N.W.2d 37, 40 (Iowa 1979). We believe Heinold, the moving party, has met his burden.

## II. Material Fact

█ The basic issue seems to be whether P.C.A. retained a security interest in the hogs after their sale by the debtor, Jackson. The applicable law appears to be section 554.9306(2) of the Code of Iowa, which provides:

Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof *unless the disposition was authorized by the secured party in the security agreement or otherwise,* and also continues in any identifiable proceeds including collections received by the debtor.

(emphasis added). The "otherwise" language, upon proper proof, includes a prior course of dealing, *Hedrick Savings Bank v. Myers,* 229 N.W.2d 252 (Iowa 1975), and constitutes authority to sell pledged collateral under § 554.9306(2). *Id.* at 256. In *Hedrick,* the court ruled that, notwithstanding the fact that there was specific prohibition of sale without written consent contained in the security agreement, the trial court was correct in finding that the plaintiff bank had expressly authorized the sale of certain feeder pigs and impliedly authorized the sale of other pigs as shown by the course of dealing.

The security agreement does not authorize any disposition of the collateral in this case. However, there appears to be no genuine issue as to the "otherwise" language. Jackson states in part that:

I started doing business with the Ottumwa Production Credit Association in about 1970. I kept the books for my farming operation, although my wife did help some. When I sold crops or hogs, I was the one who negotiated with the buyer. When I sold crops or hogs which were listed on my financing statements to O.P.C.A., the O.P.C.A. did not require me to request permission to sell nor give

them notice; I was not required to have the checks written jointly to both me and O.P.C.A. *The O.P.C.A. never had me come to them for approval of a sale.* (emphasis added). John Schlieman, branch manager of the Ottumwa P.C.A. in 1979, was asked the following question in his deposition.

Q. And, if I understand correctly, over the years that Mr. Jackson did business with Ottumwa P.C.A. if he had some hogs of market weight and felt that in his opinion the market was at a good time to sell *he didn't have to call up the P.C.A. and get permission to take them over to a sale barn* or to some other buyer and sell them? A. That's correct.

Furthermore, attached to the statement of material facts filed by the P.C.A. in resistance to the motion for summary judgment was the affidavit of Charles Celania, acting loan officer between 1973 and 1979 at the Ottumwa P.C.A. It states in part:

In connection with making loans, the usual practice with a borrower was to list all items of prospective income, including crops to be raised, livestock to be fed and sold and in connection with this prospective, schedule for anticipated repayments were made on the basis of anticipated sale of livestock, and anticipated marketing of grain crops. I handled the preparation of application for Jackson under date of August 4, 1978, and prepared analysis to Ottumwa PCA under date of October 17, 1978. These analyses projected sales, and amounts to be realized from sale of livestock and grain produced by the borrower.

Borrowers were advised generally, and James W. Jackson and Debra K. Jackson, in particular, *that sale of collateral grain and livestock* was conditional upon the borrowers bringing all proceeds advised the borrower that I would expect $4,174.07 *from the sale* of 36 shoats to be brought into my office when Jackson came in and that I would prefer the money to be in the form of a cashier's check. At no time did I, or any other representative of Ottumwa Production Credit Association to my knowledge, ever state or authorize the Jacksons to use

proceeds from sale of collateral livestock or grain, and at all times, the Jackson borrowers were directed to bring *sale proceeds* from any collateral livestock or grain to Ottumwa PCA.

(emphasis added).

After considering the entire file and the foregoing statement of authorities, we must agree with the trial court that there is no genuine issue of material fact with regard to the matter of authority of the Jacksons to sell the hogs to Heinhold Hog Market. Although the borrowers were supposed to bring the proceeds to the P.C.A., the sale was expressly authorized within the purview of § 554.9306(2). Therefore, the Ottumwa PCA lost its security interest in the collateral as a matter of law.

We affirm the trial court's finding that summary judgment should be rendered in favor of Heinhold Hog Market, Inc.

AFFIRMED.

All Judges concur except SNELL, J., who dissents.

SNELL, Judge (dissenting).

The majority has jumped the gun in deciding this case. An appellate court may affirm a trial court's sustaining of a defendant's summary judgment motion only if there is no genuine issue of material fact and judgment can be granted as a matter of law. Here, there is a genuine issue of fact and the controlling legal principle may well be conditioned on the fact determination.

The borrower, Jackson, claims that P.C.A. in the past had allowed him to sell hogs and apply the proceeds to purchasing feed. The affidavit of Charles Celania states that sale of collateral grain and livestock was conditional on the borrower bringing all proceeds from these sales to the P.C.A. A clear issue of fact is presented as to what was the prior course of dealing. A trial is mandated to decide this issue.

In *Lisbon Bank & Trust Co. v. Murray,* 206 N.W.2d 96 (Iowa 1973), the supreme court carefully postponed until another day a determination of what would be the effect of a prohibition against sale of collater-

al without written consent. That day arrived with the decision in *Hedrick Savings Bank v. Myers,* 229 N.W.2d 252 (Iowa 1975), where the court held that a prior course of dealing *may* constitute authority to sell pledged collateral under the "otherwise" language of Section 554.9306(2). In *Hedrick,* however, the court found the facts indicated that the prior course of dealing constituted authority to sell the collateral. The court carefully pointed out that it had not decided whether the lender had waived its rights to the proceeds of sales by failing to apply the proceeds of other collateral to satisfy the indebtedness. We should be equally careful here because it is evident that the facts to which the law must be applied have not even been determined.

The case should be remanded for trial.