**HUMBOLDT TRUST & SAVINGS BANK,**
**Plaintiff-Appellee/Cross-Appellant,**

v.

**Howard ENTLER and Brenda Entler,**
**Defendants-Appellants,**

and

**Farmers Cooperative Company, Bradgate, Rolfe, Gilmore City, Pioneer,**
**Defendant/Cross-Appellee.**

No. 83–252.

Court of Appeals of Iowa.

April 24, 1984.

Robert A. Dotson of Hutchinson, Buchanan, McClure & Dotson, Algona, for defendants-appellants.

Herbert R. Bennett of Bennett, Wilke & Barbour, Fort Dodge, for plaintiff-appellee/cross-appellant.

Tito Trevino of Kersten, Opheim, Carlson & Trevino, Fort Dodge, for defendant-cross-appellee.

Heard by OXBERGER, C.J., and SNELL and SCHLEGEL, JJ.

SCHLEGEL, Judge.

Defendants Entler appeal and plaintiff bank cross-appeals from judgment in an action upon promissory notes executed by defendant, Howard Entler. Entler asserts that: (1) the evidence was sufficient to establish a course of dealing under which the bank waived its security interest in identifiable proceeds obtained from the sale of crops; and (2) the evidence was insufficient to establish that their 1981 Buick was identifiable proceeds from the sale of crops and thus within the scope of a security agreement. Plaintiff bank asserts on cross-appeal that: (1) the action is equitable and thus reviewable de novo; and (2) the evidence was insufficient to establish a course of dealing under which it waived its rights under a perfected security agreement to grain sold by the debtor to defendant cooperative. Defendant cooperative asserts that the action is substantially legal in nature and thus triable and reviewable at law. The cooperative also claims that the bank waived its security interest in the crops through a prior course of dealing. We affirm on both the appeal and the cross-appeal.

The bank filed a petition in April, 1981, captioned as equitable, seeking recovery based on the unpaid notes executed by Entler. Recovery was sought from Entler, his wife, and the cooperative which had purchased grain subject to the bank's perfected security interest in Entler's crops. Following trial to the court, judgment was entered allowing the bank to recover proceeds from the Entlers which consisted of a house and car, which were found to be identifiable from the sale of grain subject to the security interest. Recovery from the cooperative was denied on the ground that a course of dealing between Entler and the bank had given Entler implied authority to sell the grain and thus extinguished the bank's security interest as against a third-party purchaser. Entler's appeal and the bank's cross-appeal followed.

I.

The bank and the cooperative raise a preliminary issue involving the scope of our review. The bank claims the case was filed in equity and tried as such; therefore, our review is de novo. Iowa R.App.P. 4. The cooperative asserts that, since the bank sought a money judgment, the case was actually tried at law and, therefore, we must accept the trial court's findings of fact if they are supported by substantial evidence. Iowa R.App.P. 14(f)(1). This issue arose in the context of the larger issue involving whether the bank waived its right to pursue the proceeds of Entler's grain sales to the cooperative because of an alleged prior course of dealing.

We do not find it necessary to determine whether our review is de novo or on error, however, because we would reach the same result in this case under either standard.

II.

■ The main issue is whether the bank retained a security interest under Iowa law in the grain after its transfer to defendant cooperative. The applicable law is Iowa Code section 554.9306(2). That section provides:

Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

As we noted in *Ottumwa Production Credit Association v. Heinhold Hog Market, Inc.*, 340 N.W.2d 801, 802 (Iowa Ct. App.1983), "[t]he 'otherwise' language, upon proper proof, includes a prior course of dealing, *Hedrick Savings Bank v. Myers*, 229 N.W.2d 252 (Iowa 1975), and constitutes authority to sell pledged collateral under § 554.9306(2). *Id.* at 256." Notwithstanding the fact that there is a specific prohibition of sale without written consent contained in a security agreement, a holder of a security interest may be held to have impliedly authorized the sale of collateral by a prior course of dealing. *Hedrick Savings Bank v. Myers*, 229 N.W.2d at 255–56.

"Course of dealing" is defined in Iowa Code section 554.1205(1) as "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." It follows that, when the parties' actions fall outside the "sequence of previous conduct," there is no "understanding" between the parties authorizing the transaction. In order for a buyer to take collateral free of a properly perfected security interest under the "course of dealing" doctrine recognized in the *Hedrick* case, that buyer must present proof of a course of dealing *and* show that the purchase involved was within that course of dealing.

Since 1972 the defendants, Brenda and Howard Entler, were self-employed tenant farmers operating under cash rent arrangements and crop share leases with Howard's family. The Entlers periodically borrowed operating capital from plaintiff bank during this period of time. Each of the promissory notes provided that "[d]ebtor will not sell or offer to sell or otherwise transfer or encumber the collateral or any part thereof without written consent of Secured Party, will keep the Collateral in good order ...." The bank at no time actually gave written consent for sale of collateral. It did, however, accept payment on the Entlers' loans from the sale of collateral. Prior to 1980, the Entlers paid off all loans from plaintiff bank with proceeds from the sale of grain in which the bank had a properly perfected security interest. In 1980 they sold grain to defendant cooperative and used the proceeds from these sales to purchase a homestead. In addition to a homestead, the Entlers purchased a 1981 Buick through, in part, trade-in of a Jeep that had, in part, been purchased with funds obtained from the cooperative in 1980 as proceeds from the sale of grain. Various of these transactions involved accounts which the bank did not monitor for the purpose of detecting transactions involving grain subject to its security interest. Subsequently, Entler filed for bankruptcy without having made any payments on the seven promissory notes involved in this case.

We recently affirmed a grant of summary judgment to a third-party buyer in *Ottumwa Production Credit Association v. Heinhold Hog Market, Inc.*, 340 N.W.2d 801, under the exact same factual situation. In that case the creditor had expressly authorized the sale of collateral but had required the borrowers to return the proceeds to it. *Id.* at 802–03. The creditor argued in that case that the fact that it did not authorize the borrower to use the proceeds from the sale of the collateral generated a material issue of fact and required a reversal for trial. We ruled that the creditor had lost its security interest in the collateral as a matter of law. *Id.* at 803. Our focus in that case was on whether the sale of the collateral was authorized, not whether the borrower disposed of the proceeds in a manner not impliedly authorized. The disputed sale of collateral in this case was to a grain cooperative. This is exactly

the same course of dealing impliedly authorized by the plaintiff bank in the past. We hold as a matter of law that the Humboldt Trust and Savings Bank lost its security interest in the collateral.

■ Moreover, we believe this result is mandated by the supreme court's decision in *Hedrick Savings Bank v. Myers*, 229 N.W.2d 252 (Iowa 1975). In that case, sales of secured collateral were made, without the creditor's objection, to various livestock dealers. The creditor had knowledge of those sales, accepted checks from the sales of the collateral and relied upon the borrower's honesty to properly account for the proceeds. *Id.* at 255. Under those facts, the supreme court affirmed the trial court's decision that the creditor had authorized the sale of the collateral. The focus in *Hedrick* in the determination of whether a sale of collateral is impliedly authorized is on the sale, rather than on the disposition of the proceeds. Consent to a sale of secured collateral is not rescinded by the failure to remit the proceeds to the secured creditor; at least where, as here, there has been no showing that the buyer was required to pay the proceeds directly to the secured party, or where he knew of the conditions of the waiver. *Ottumwa Production Credit Association v. Keoco Auction Co.*, 347 N.W.2d 393 (Iowa 1984). In this case the Farmers Cooperative Company has shown that it was acting within the prior course of dealing authorized by the bank. The security interest does not continue in the collateral.

We affirm the trial court's decision on cross-appeal.

### III.

This case is unique in that actions of this type do not usually involve the seller of the secured collateral. *See Hedrick Savings Bank v. Myers*, 229 N.W.2d at 253–54; *Lisbon Bank & Trust Co. v. Murray*, 206 N.W.2d 96, 97 (Iowa 1973); *Ottumwa Production Credit Association v. Heinhold*

*Hog Market, Inc.*, 340 N.W.2d at 801. Actions against the seller are normally stayed by bankruptcy proceedings instituted by the seller. In this case, however, the federal bankruptcy court has lifted the stay for a determination by the state court of whether the defendants, Howard and Brenda Entler, are entitled to the exemptions claimed. The Entlers assert that the bank waived its security interest in the proceeds of the sale of collateral as evidenced by their prior course of dealings, and that the evidence was insufficient to establish that their 1981 Buick automobile was an identifiable proceed.

Under the language of Iowa Code section 554.9306(2), the security interest "continues in any identifiable proceeds including collections received by the debtor." The Entlers contend, however, that the bank waived its security interest in the proceeds as evidenced by their prior course of dealing. *See* 79 C.J.S. *Secured Transactions* § 4 (Supp.1974) (Code provisions are supplemented by the general principles of law relating to waiver). Specifically, the Entlers argue that the trial court's finding that "[d]efendant was not required to apply sale proceeds on any of his notes with Bank" establishes a waiver by the bank in the proceeds.[1]

■ A secured creditor may assert a lien under its security agreement upon identifiable proceeds from the sale of collateral. *Domain Industries, Inc. v. First Security Bank and Trust Co.*, 230 N.W.2d 165, 168 (Iowa 1975). As in this case, a secured creditor may also release its liens on collateral and retain a security interest in the identifiable proceeds. *See Webster City Production Credit Association v. G.O. Implement, Inc.*, 310 N.W.2d 541, 542–42 (Iowa Ct.App.1981). "Proceeds" is defined in Iowa Code section 554.9306(1) to include "whatever is received upon the sale, exchange, collection or other disposition of collateral *or proceeds*" (emphasis

---

**1.** The "proceeds" at issue in this case are the parties' personal residence and 1981 Buick automobile.

added). Thus, a security interest may follow not only the proceeds from the initial disposition of collateral, but it may also follow what results from the disposition of those proceeds.

■ It is true, as the Entlers contend, that the bank never required them to actually apply the proceeds from sales of collateral to their loans, or to have the bank's name included on the checks received from sales of collateral. However, the trial court found, and we agree, that until 1980 the Entlers would apply the proceeds from the sale of grain and livestock to the promissory notes. It was this "course of dealing" upon which the bank relied in not requiring the Entlers to obtain prior written permission to sell collateral. We hold that, under these facts, the bank did not waive its security interest in the proceeds received by the Entlers from the sale of collateral.

■ We also believe that there was substantial evidence showing that the Entlers' 1981 Buick automobile is an "identifiable proceed" from the sale of collateral. In this case, one of Entler's grain sales challenged by the bank occurred on October 20, 1980, for which Entler received a check for approximately $8,150. This amount was used to buy a Jeep pickup. He then traded this pickup, along with another vehicle and some cash, for the 1981 Buick upon which the trial court imposed a lien for approximately $8,150 in the bank's favor. Since the Buick is directly traceable to the 1980 sale of grain in which the bank had a security interest, the trial court correctly concluded that it is "identifiable proceeds" from the sale of collateral and that the bank's security interest continued in the Buick.

The judgment, with respect to the issues raised in Entler's appeal, is affirmed.

AFFIRMED.