ADAIR COUNTY FARM SERVICE, Plaintiff-Appellee,

v.

CRESTON FEED & GRAIN, INC., Defendant-Appellant,

Prescott Grain & Supply, Inc., Defendant,

Farmers Cooperative Company (Greenfield, Iowa), Defendant-Appellant,

Iowa State Bank, Defendant,

Grace Shinkle and Donna J. Phillips, Trustees of the Kenneth L. Shinkle Trust, Intervenors-Appellees.

No. 85–209.

Court of Appeals of Iowa.

June 4, 1986.

Paul J. Boysen, Jr., of Camp, Harsh, Boysen, James & Mackaman, Creston, and John E. Wietzke, Greenfield, for defendants-appellants.

Charles W. Carlberg of Don Carlos, Carlberg & Jungmann, Greenfield, for plaintiff-appellee.

Rhoda E. Schollars, Anita, for intervenors-appellees.

DONIELSON, Judge.

Two defendants (the elevators) appeal from judgment for plaintiff and landlord-intervenors in an action for conversion of grain, asserting: (1) that the evidence was sufficient to establish course of dealing and/or usage of trade operating as a waiver of plaintiff grain dealer's security interest in grain sold to defendants; (2) that the evidence of origin of the grain sold was not specific enough to support an award of damages; and (3) that the damage award was improperly apportioned in a manner constituting a quotient and/or speculative verdict.

Plaintiff, Adair County Farm Service (ACFS), took a security interest in the grain crop of a debtor-farmer when it sold various goods and services to him on credit. The debt was not paid and plaintiff brought an action for conversion naming as defendants, inter alia, three elevators to whom the farmer had sold grain. The farmer's landlords, Grace Shinkle and Donna Phillips, Trustees of the Kenneth Shinkle Trust, intervened, asserting the priority of a landlord's lien. Plaintiff admitted the priority of the landlord's lien.

At the trial commenced in October of 1984,[1] defendants introduced evidence of a prior course of dealing between plaintiff and the farmer alleged to operate as a waiver of plaintiff's security interest. Evidence was also introduced that local grain dealers did not customarily check for the existence of a security interest when making a purchase of grain. There was no evidence that the debtor farmed any land other than the four parcels covered by the security interest. Not all of the grain sold to defendants was specifically identified as having come from a particular property.

The jury returned a verdict for plaintiff against the grain dealer defendants in respective amounts of $7,804.38 against Creston Feed & Grain, Inc., $1,819.06 against Prescott Grain & Supply, Inc., and $19,-375.42 against Farmers Cooperative Company. The jury returned a verdict in favor of intervenors against defendant Creston Feed & Grain, Inc. in the amount of $3,409.71 and against defendant Farmers Cooperative Company in the amount of $4,078.93. The trial court proportionately reduced the verdicts for intervenors so that the total was $2,754.00, the maximum amount of unpaid rent shown by the evidence. Notice of appeal was filed by Creston Feed & Grain, Inc. and Farmers Coop-

---

1. The change of law in Iowa Code § 554.9307     did not apply to this case.

erative Company. Defendant Prescott Grain & Supply, Inc. did not appeal.

## I.

The applicable Iowa law is found in Iowa Code § 554.9306(2) (1983), which provides:

Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof *unless the disposition was authorized by the secured party in the security agreement or otherwise,* and also continues in any identifiable proceeds including collections received by the debtor. (emphasis added)

We have held that:

The "otherwise" language, upon proper proof, includes a prior course of dealing, *Hedrick Savings Bank v. Myers,* 229 N.W.2d 252 (Iowa 1975), and constitutes authority to sell pledged collateral under § 554.9306(2). *Id.* at 256. In *Hedrick,* the court ruled that, notwithstanding the fact that there was specific prohibition of sale without written consent contained in the security agreement, the trial court was correct in finding that the plaintiff bank had expressly authorized the sale of certain feeder pigs and impliedly authorized the sale of other pigs as shown by the course of dealing.

*Ottumwa Production Credit Association v. Heinhold Hog Market,* 340 N.W.2d 801, 802 (Iowa Ct.App.1983). *See also Parkersburg State Bank v. Swift Independent Packing Co.,* 764 F.2d 512, 514 (8th Cir. 1985) (prior course of dealing established and transaction was authorized because it was within parties' agreement); *Ottumwa Production Credit Association v. Keoco Auction Co.,* 347 N.W.2d 393, 397 (Iowa 1984) (secured party expressly waived security interest so transaction was authorized); *Humboldt Trust & Savings Bank v. Entler,* 349 N.W.2d 778, 781 (Iowa Ct. App.1984) (course of dealing existed so that secured party waived interest as to buyer of goods, but allowed to trace proceeds to recover against debtor); *Larsen v. Warrington,* 348 N.W.2d 637, 641 (Iowa Ct. App.1984) (specific course of dealing devel-oped between secured party and debtor, but transaction was outside of scope of specific understanding so secured party did not authorize transaction).

As this authority indicates, even though a written waiver provision is required by the security agreement, the Iowa courts have found a prior course of dealing can supersede such language in the security agreement. Thus, the prior course of dealing, not the language in the security agreement, is determinative. *Hedrick Savings Bank,* 229 N.W.2d at 256.

The security agreement in this case did not contain the waiver language found in *Hedrick,* so that the facts are more akin to that found in *Libson Bank and Trust Company v. Murray,* 206 N.W.2d 96, 97 (Iowa 1973), and its progeny. While the court in *Libson* upheld the course of dealing, the trial court in that case explicitly found the debtor had authority to sell the collateral in question. Our case is distinguishable because the jury was properly instructed on the course of dealing issue and found no course of dealing existed. Even though evidence of a course of dealing was presented by the buyers of the debtor's goods, as an appellate court, we are bound by the findings of fact if supported by substantial evidence. *See* Iowa R.App.P. 14(f)(1). In this case, the evidence, while vigorously disputed, was sufficient to find no course of dealing authorizing the sale of the crops in question existed.

The elevators also submit that the custom and usage regarding the sale of grain in the community indicated the security interest did not exist after their purchase of grain. We find this position misses the mark.

While Iowa law establishes that as between the debtor and the secured party, the course of dealing supersedes the terms provided in the security agreement, it is quite a different matter to contend the custom and usage in the trade can override the express terms of an agreement between two contracting parties. *See* Iowa Code § 554.1205(4) (1983). We do not need

to decide this issue, however, because the record does not clearly establish that a custom or usage existed in the community.

## II.

■ The elevators contend that, given the description of the land in the financing statement, ACFS is required to trace the grain so as to identify which fields produced the grain that was purchased by the various elevators. The 1981 financing statement provided that the occupant, Fred A. Garbes, used the following land:

| Owner | Location | No. of Acres |
|---|---|---|
| Fred C. Garbes | 8 mi. SW Greenfield, IA | 360 |
| Grace Shinkle | 12 mi. SW Greenfield, IA | 110 |
| Marion Armstrong | 14 mi. SW Greenfield, IA | 80 |
| Bill Saylor | 14 mi. SW Greenfield, IA | 110 |

Because the record indicates the debtor only farmed the land described in the financing statement, our task is much easier. We do not decide whether a debtor who grows crops, a part of which are covered by a security agreement and the remainder which are not so covered, and sells all of his crops, needs to prove which elevator bought crops only covered by the security agreement. Given the facts in the record, we know that the debtor only grew crops in 1981 on the 660 acres described in the security agreement and all of these crops were sold only to the three defendant elevators.

Given these facts, we find the secured party met its burden of proof under *Harlan Production Credit Association v. Schroeder Elevator Co.*, 253 Iowa 345, 348, 112 N.W.2d 320, 322 (1961).

## III.

■ The elevators finally maintain that allowing the intervenor-landlords into the suit resulted in two conversion actions for the same grain or caused a quotient verdict. We disagree.

Testimony identified that grain grown on the Shinkle land was delivered to Creston Feed and the Farmers Cooperative and had a value of $3,409.71 and $4,078.93, respectively. Given that the landlord's lien was for $2,754.00 and the damages awarded

totalled $7,488.64, the trial court, pro rata, reduced that award to $1,266.84 and $1,487.16, respectively.

The jury was properly instructed as to quotient verdicts. The record does not indicate the jurors estimated damages and then averaged them out. The verdict does not suffer from speculativeness because the damages awarded to the secured party and the landlord-intervenors against the defendant-buyers reflected that the award was based on the identifiable loads of grain sold to the two buyers in proportion to the total grain sold by the debtor. *See Larsen v. United Federal Savings & Loan Association of Des Moines*, 300 N.W.2d 281, 288 (Iowa 1981) ("Although recovery is denied if it is speculative and uncertain whether damages have been sustained, if uncertainty lies only in the amount of damages, recovery may be had if there is a reasonable basis in the evidence from which the amount can be inferred or approximated."); *see also Palmer v. Albert*, 310 N.W.2d 169, 174 (Iowa 1981); *Shinrone, Inc. v. Tasco, Inc.*, 283 N.W.2d 280, 286 (Iowa 1979). The intervenor's land was one-sixth of the total amount of land the debtor farmed, and, given that no loads from the intervenor's land were sold to Prescott Grain, the award to the intervenors against Creston Feed and Farmers Cooperative was a proportionate share of the damages.

AFFIRMED.