# IN THE COURT OF APPEALS OF IOWA

No. 21-0774
Filed April 27, 2022

**QUALITY PLUS FEEDS, INC.,**
      Plaintiff-Appellee,

**vs.**

**COMPEER FINANCIAL, FLCA,**
      Defendant-Appellant,

**and**

**ETCHER FAMILY FARMS, LLC; ETCHER FARMS, INC.; AGRILAND FS, INC.; DEWITT VETERINARY SERVICES, P.C. d/b/a DEWITT VETERINARY CLINIC; JASON DENNING; PRECISION PUMPING, INC.; and ELMWOOD FARMS, LLC,**
      Defendants.

_____

Appeal from the Iowa District Court for Monroe County, Daniel P. Wilson, Judge.

A financial institution appeals the grant of summary judgment to a creditor making a competing claim to collateral. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Dustan J. Cross and Rick J. Halbur of Gislason & Hunter, LLP, New Ulm, Minnesota, for appellant.

Thomas D. Story, Alexander M. Johnson, and Jennifer E. Lindberg of Brown, Winick, Graves, Gross, and Baskerville, P.L.C., Des Moines, for appellee.

Heard by Bower, C.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

A dairy-cattle operation failed and was liquidated. The proceeds were not enough to satisfy the claims of all creditors, leading to this tussle between two creditors competing for those proceeds. The district court granted summary judgment in favor of one creditor over the other, leading to this appeal.

**I.  Background**[1]

The dairy-cattle operation consists of three entities: Etcher Family Farms, LLC (EFF); Etcher Farms, Inc. (EFI); and Elmwood Farms, LLC (Elmwood). Compeer Financial, FLCA (Compeer) is a financial institution that has loaned money to one or more of the entities to finance their operations since 2014. The loans are secured by real and personal property. The unpaid loan balances exceed the value of the proceeds at stake in this case.

Quality Plus Feeds, Inc. (Quality Plus) is a feed and nutrient dealer that provided its product to EFF and EFI to feed to their cattle in late 2017 and early 2018. For ease of reference, we will refer to all product Quality Plus provided as "feed."[2] Quality Plus was not paid for the feed it sold to EFF and EFI. The proceeds at stake in this case would satisfy the unpaid balance owed to Quality Plus. The question is whether Quality Plus has a valid claim to those proceeds.

---

[1] The background we provide is intended for informational purposes only. It does not bind the parties or the district court on remand.

[2] *See* Iowa Code § 570A.1(8) (2020) (defining "feed" as "a commercial feed, feed ingredient, mineral feed, drug, animal health product, or customer-formula feed which is used for the feeding of livestock, including but not limited to feed as defined in section 198.3").

In March 2018, all three entities of the dairy-cattle operation filed for chapter 11 bankruptcy. Those bankruptcy proceedings were dismissed in January 2019.

The cattle owned by EFF and EFI were sold later in 2019, yielding proceeds totaling $1,027,904.09. Cattle owned by all three entities also produced milk that was sold in 2019, yielding milk-sale proceeds of $317,308.51. The cattle-sale and milk-sale proceeds totaling $1,345,212.60 are the funds over which Compeer and Quality Plus are fighting.

Compeer claims it has a prior, perfected security interest in the collateral and is therefore entitled to all the relevant proceeds.[3] Quality Plus asserts that it has an agricultural-supply-dealer lien in the proceeds under Iowa Code chapter 570A that has priority over Compeer's security interests.[4]

Quality Plus filed this action seeking to establish its priority in the proceeds. Compeer denied Quality Plus's claim, asserted affirmative defenses, and asserted a counterclaim. The counterclaim asserts claims of unjust enrichment, conversion, and foreclosure of a security interest. The counterclaim relates to the milk-sale proceeds and Quality Plus's action in asserting an agricultural-supply-dealer lien in the proceeds with respect to milk sold by Elmwood—an entity to which Quality Plus never sold feed.

---

[3] *See* Iowa Code § 554.9322(1) (generally setting priority among conflicting security interest and agricultural liens on a first-in-time, first-in-right order).

[4] *See* Iowa Code § 570A.5(3) ("A lien in livestock feed shall have priority over an earlier perfected lien or security interest to the extent of the difference between the acquisition price of the livestock and the fair market value of the livestock at the time the lien attaches or the sale price of the livestock, whichever is greater.").

Quality Plus and Compeer filed competing motions for summary judgment. The district court granted Quality Plus's motion for summary judgment and denied Compeer's, resulting in judgment in Quality Plus's favor against Compeer in the amount of $348,306.30 and foreclosure of its agricultural-supply-dealer liens in that amount. In entering judgment, the court determined Compeer's defenses did not defeat Quality Plus's claims and dismissed Compeer's counterclaims. Compeer appeals. Compeer asserts that Quality Plus should not have been granted summary judgment and Compeer should have.

## II.    Analysis

The parties ask us to resolve nuances of the applicability of various sections of the Iowa Code related to priority between competing perfected security interests and agricultural-supply-dealer liens. But resolution of those nuances depends on the facts, and the material facts have not been determined at this stage of the proceeding. So, while the parties ask us to address issues pertaining to competing claims of priority, we instead resolve this appeal on the basis of our rules and standards related to summary judgment.

We review rulings on motions for summary judgment for corrections of legal error.[5] Summary judgment in a party's favor is appropriate if that party "demonstrates that there are no disputed issues of material fact and that application of the law to the undisputed facts compels judgment in that party's favor."[6]

---

[5] *Buboltz v. Birusingh*, 962 N.W.2d 747, 751 (Iowa 2021).
[6] *Buboltz*, 962 N.W.2d at 754.

After reviewing the affidavits[7] and other supporting documentation submitted in support of the dueling summary-judgment motions, we conclude there are too many questions left unanswered to permit granting summary judgment to either party. Navigating the competing priority rules in Iowa Code chapters 554 and 570A is a somewhat complex and fact-intensive exercise. In this case, it requires consideration of which entities' cattle were supplied with Quality Plus's feed and what happened to those cattle, as the lien attaches only to the cattle consuming the feed[8] and their proceeds.[9] To the extent Quality Plus asserts a lien in proceeds, the proceeds would need to be identifiable and traced to subsequent assets.[10] This would not require burdensome and intensive recordkeeping documenting a separate lien on each animal for the amount of feed that animal consumed,[11] but it requires some level of identification of the proceeds.[12] Identifying the proceeds here requires answers to questions about such things as

---

[7] Compeer asks us not to consider one or more affidavits submitted by Quality Plus because they are not based on the personal knowledge of the affiants, as required by Iowa Rule of Civil Procedure 1.981(5). While there may be some merit to Compeer's contention, we do not need to resolve this claim, because, even if we accept Quality Plus's affidavits as being based on the personal knowledge of the affiants, they are not sufficient to remove all genuine issues of material fact.

[8] *See* Iowa Code § 570A.3(2) (limiting the feed supplier's lien to "[l]ivestock consuming the feed").

[9] *See In re Schley*, 509 B.R. 901, 914 (Bankr. N.D. Iowa 2014) (determining "that agricultural liens extend to proceeds").

[10] *See Citizens Sav. Bank v. Miller*, 515 N.W.2d 7, 9 (Iowa 1994) (noting the replacement cattle can meet the definition of proceeds if received upon disposition of the original cattle, but the proceeds must be identifiable and "traceable" to later-acquired assets).

[11] *See In re Schley*, 565 B.R. 655, 661 (Bankr. N.D. Iowa 2017) (noting it would defeat the legislative intent behind chapter 570A of maintaining a fluid feed market if "burdensome and intensive recordkeeping" were required to track "a separate lien on each animal for the amount of feed that that animal consumed" before a feed dealer could establish a lien).

[12] *See Citizens*, 515 N.W.2d at 9.

whether cattle that consumed Quality Plus feed were sold, whether replacement cattle were purchased, or whether the cattle ended up in the Elmwood herd.[13]  An additional unsettled question is what the purchase price was, if any, for the cattle sold by EFF and EFI that generated the sale proceeds fought over here.  This is important because Quality Plus could only get priority over Compeer's prior, perfected security interest "to the extent of the difference between the acquisition price of the livestock and the fair market value of the livestock at the time the lien attaches or the sale price of the livestock, whichever is greater."[14]  While some of the cattle sold may have been born into the herd, thus giving them an acquisition price of zero,[15] it has not been conclusively established whether all or just some of the cattle sold were born into the herd.  Whether any cattle in the herd were purchased and, if so, what the acquisition price was are additional fact questions for which no answer is definitively provided.  These unanswered questions contribute to the need to deny summary judgment.

To some degree, Quality Plus seems to acknowledge that some of the questions listed above remain unanswered.  Quality Plus seeks to sidestep this problem by suggesting that resolution of these questions is not a *material* question

---

[13] Even though Quality Plus did not supply feed to Elmwood, Quality Plus points to the possibility that Elmwood ended up with cattle that were subject to a Quality Plus lien, which calls into question whether that lien continued in milk or sale proceeds generated from those cattle.  Whether that happened, and the extent to which it happened, is just one of the many unanswered questions that contribute to the conclusion that summary judgment is not appropriate.

[14] *See* Iowa Code § 570A.5(3) (setting the limit of the priority of an agricultural-supply-dealer lien).

[15] *See Oyens Feed & Supply, Inc. v. Primebank*, 879 N.W.2d 853, 865–66 (Iowa 2016) (holding that livestock born into a farming operation have "a zero acquisition price for purposes of Iowa Code section 570A.5(3)").

of fact.[16]  It argues that, because the size of the contested pot ($1,345,212.60) is so much bigger than the claimed lien ($348,306.30), even if the unanswered questions are resolved in Compeer's favor, all it will do is reduce the size of the contested pot, but not to the point that the pot is too small to cover the claimed lien.  So, Quality Plus argues, the disputed facts are not material, because they will not change the outcome.[17]  While we agree that the end result may be that resolution of these factual disputes does not change the outcome, it is speculative to reach that conclusion based on this record.  The unanswered questions create a genuine issue as to whether the contested pot is indeed bigger than the claimed lien.  We will not speculate in order to grant summary judgment.

### III.    Conclusion

The unanswered questions referenced above are not intended as an exhaustive list.  They simply highlight some of the important questions not answered by this record.  Before we, or the district court, can resolve the priority disputes at issue in this case, there must be answers to the factual questions needed to navigate the statutes.  Those factual questions may need to be answered by a trial.

Finding genuine issues of material fact that preclude the grant of summary judgment for either party, we reverse that part of the district court's order granting summary judgment to Quality Plus.  This reversal includes reversal of that part of the district court's ruling that rejected Compeer's affirmative defenses and

---

[16] *See* Iowa R. Civ. P. 1.981(3) (permitting summary judgment when "there is no genuine issue as to any *material* fact" (emphasis added)).
[17] *See Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 544 (Iowa 2018) ("A fact is material when it might affect the outcome of a lawsuit.").

dismissed Compeer's counterclaims. Compeer's affirmative defenses and counterclaims are reinstated. We affirm the part of the district court's order that denied Compeer's motion for summary judgment.

We remand for further proceedings consistent with this opinion after denial of both parties' motions for summary judgment. Costs of appeal shall be assessed equally between Quality Plus and Compeer.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**